**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: _____**

KEVIN KOHMETSCHER, individually
and on behalf of similarly situated
individuals,

           Plaintiff,

v.

NEXTERA ENERGY, INC., a Florida,

           Defendant.

_____ /

                               **CLASS ACTION**

## CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, Kevin Kohmetscher, brings this Class Action Complaint & Demand for Jury Trial against Defendant, NextEra Energy, Inc. ("NextEra" or "Defendant"), to stop Defendant from operating wind turbines near residential communities in a way that causes a nuisance and interferes with homeowners' use and enjoyment of their property. Plaintiff alleges as follows based on personal knowledge as to himself and his own acts and experiences, and as to all other matters, on information and belief, including an investigation by his attorneys.

### NATURE OF THE ACTION

1.     Defendant is one of the largest electric utility companies in the country, and the largest generator of wind energy in the world.

2.     To generate wind energy, Defendant has constructed numerous "wind farms" across the United States. A wind farm is an array of wind turbines. Each turbine sits high in the air atop a tower and consists of a large rotor with three blades that spin as wind passes over the blades.

Defendant's wind farms often consist of dozens of turbines and stretch for miles across open terrain.

3.    Although wind farms can supply renewable energy, they can also pose a number of hazards when built too close to homes and residential communities.

4.    For instance, a turbine's spinning blades create flickering shadows that pass over nearby land. For those in the path of a wind turbine's shadows, the "shadow flicker" effect is similar to a constant strobe light. Those who experience prolonged shadow flicker often complain of severe headaches, nausea, difficulty concentrating, and in some cases seizures.

5.    Turbines are also very noisy. The spinning blades create a deep thumping noise that sounds similar to a distant helicopter or train. This constant sound can travel for miles depending on weather conditions, and results in a decreased quality of life for those within a certain radius of the wind turbines due to stress, loss of sleep, and anxiety.

6.    Rather than constructing its wind farms away from residential areas to prevent interfering with homeowners' use and enjoyment of their land, Defendant has instead sited many of its wind farms in the middle of farm fields, near houses, and next to important roads.

7.    Although Defendant's chosen wind farm locations may be optimal for wind energy generation, the turbines' proximity to residential areas can be devastating to those living in the surrounding community. The turbines drive people from their homes due to the unreasonable inconvenience, interference, annoyance, and adverse health effects caused by the turbines. Wind farms also destroy the scenic beauty of rural areas, cluttering the horizon with conspicuous towers and spinning blades.

8.    Those who attempt to sell their homes and move away from Defendant's wind farms are often unable to do so because the value of land near turbines plummets.

- 2 -

9.      Accordingly, Plaintiff brings this action on his own behalf and on behalf of similarly situated individuals to obtain redress and injunctive relief for those who have suffered harm as a result of Defendant's substantial and unreasonable interference with their use and enjoyment of their property.

10.     On his own behalf and on behalf of a proposed class defined below, Plaintiff seeks an award of damages compensating him and the putative class members for the negative effects that Defendant's turbines have had on their health and well-being, use and enjoyment of their property, and diminution in value of their property due to Defendant's turbines. Plaintiff also seeks a permanent injunction barring Defendant from continuing to unreasonably interfere with his and the putative class members' use and enjoyment of their property.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, because this case is a putative class action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are greater than 100 putative class members; at least one putative class member is a citizen of a state other than Defendant's states of citizenship; and none of the exceptions under subsection 1332(d) apply to the instant action.

12.     This Court has general personal jurisdiction over Defendant, because Defendant is a corporation organized under the laws of Florida and its headquarters is located within this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because Defendant resides in this District.

## PARTIES

14.     Plaintiff, Kevin Kohmetscher, is a natural person who resides and owns property in Nebraska.

15.     Defendant, NextEra Energy, Inc., is a for-profit corporation organized under the laws of Florida. Defendant is engaged in business as an energy company that owns and operates power generating plants and wind turbine farms across the country.

## ALLEGATIONS OF FACT COMMON TO ALL COUNTS

**Background**

16.     Wind energy is produced through the use of wind turbines. Turbines generally consist of three spinning blades connected to a rotor and a generator that sit atop a tower. As wind passes over the blades, the blades rotate and spin the generator to convert the wind's kinetic energy into electrical energy.

17.     Towers range in size up to 500 feet high, and blades can be more than 260 feet long. Due to their size, wind turbine towers require a large foundation to stay upright. Turbines are generally painted white to make them visible to aircraft.

18.     When used to generate energy for commercial applications, large numbers of wind turbines are grouped together for efficiency in arrays known as wind farms.

19.     Wind farms require use and control of extensive land area in order to optimize the spacing between turbines and minimize turbulence at downwind turbines.

20.     Wind farms are typically sited in wide-open, rural areas. As such, the turbines often disrupt the natural scenic beauty of the land where they are placed. Wind farms also pose a risk of mortality to migratory birds whose flight paths pass through wind farms.

21.     Many industrial wind turbine manufacturers recommend that turbines be at least

1,500 feet from any residence—a minimum setback—to provide a safety zone in the event of catastrophic failure (e.g. a blade breaks and flies off, or the turbine flings shards of ice that have accumulated along the blades during winter).

22.   As a result, there is typically a "no-build" zone in a 1,500 feet radius surrounding any turbine. In many instances, however, this "no-build" zone overlaps with the property of landowners.

23.   More importantly, wind turbines often interfere with residents' use and enjoyment of their property even where they live beyond the recommended minimum setback.

24.   For instance, the rotation of turbine blades causes a rhythmic flickering of sunlight, commonly called "shadow flicker."

25.   Shadow flicker can be especially noticeable in the mornings and evenings, when the sun appears close to the horizon. During such times, turbine blades can cast intermittent shadows that completely obscure sunlight each time a blade passes in front of the sun, causing a strobe-like effect. Shadow flicker can be an issue both indoors and outdoors when the sun is low in the sky.

26.   Prolonged exposure to the strobe-like effect of shadow flicker is not only distracting and annoying, it also causes headaches, nausea, and has been reported to cause seizures in certain individuals.

27.   Wind turbines can also be very noisy, exceeding prescribed decibel limits in many residential areas.

28.   In addition to the noise made by the mechanical equipment inside turbine towers, turbines also cause aerodynamic noise. Aerodynamic noise is created by wind passing over the blades of a wind turbine. The tip of a 40-50 meter blade can travel at speeds of over 140 miles per

hour under normal operating conditions. As the wind passes over the moving blade, the blade interrupts the laminar flow of air, causing turbulence and noise. Although current blade designs attempt to minimize the amount of turbulence and noise caused by wind, it is not possible to completely eliminate turbulence or noise from turbines.

29.     Those who live near wind turbines have described the noise that turbines make as a rhythmical beating that sounds like "like a train that never gets there," a "distant helicopter," "thumping," "thudding," "pulsating," and "beating."

30.     In addition to this audible thumping, turbines also emit inaudible low frequency sound waves known as infrasound. Although these sound waves are below the range of sound audible to humans, prolonged exposure can disturb sleep and impair mental health. Infrasound has been linked to increased instances of insomnia, stress, stroke, heart failure, immune system problems, dizziness, vertigo, nausea, ringing in the ears, breathing problems, abdominal and chest pain, urinary problems, effects on speech, and headaches. Further, high noise environments negatively impact learning in young children, making it hard to concentrate and communicate with others.

31.     Health effects related to noise emissions from wind turbines have been observed in individuals living up to three miles from turbines, with the effects being greatest for those within one mile.

32.     Individuals who live near Defendant's wind farms usually decide to move away from the farms shortly after their installation due to the various ways that turbines interfere with their use and enjoyment of their property, including issues stemming from shadow flicker, noise emissions, and related health issues. However, many who reside near Defendant's wind farms are

unable to move due to the financial strain caused by the decreased value of their property and the inability to find a buyer willing to live near a wind farm.

**Facts Specific to Plaintiff**

33.    Plaintiff owns a plot of land located at 2034 Rd. 1900, Blue Hill, Webster County, Nebraska. Plaintiff's plot is approximately 11 acres in size, and Plaintiff currently resides in a single-family dwelling located on his land.

34.    Plaintiff's plot has been in his family for decades. Plaintiff grew up on his land, and he purchased it from his father.

35.    Plaintiff's property is adjacent to the Cottonwood Wind Farm, a wind turbine farm owned and operated by Defendant. Defendant began constructing the Cottonwood Wind Farm in or about mid 2017, and the turbines began commercial operation in or about November 2017.

36.    The Cottonwood Wind Farm is miles-long and consists of more than 40 wind turbines built and maintained by Defendant.

37.    The rear of Plaintiff's residence faces the Cottonwood Wind Farm. In relation to Plaintiff's property, the turbines are located to the east, south, and west of Plaintiff's residence. The nearest turbine is located approximately 1,300 feet from Plaintiff's property line.

38.    Since the turbines near Plaintiff's property began operating, the turbines have negatively affected, invaded upon, and interfered with the Plaintiff's use and enjoyment of his property by:

>    a.    creating sustained, incessant, cyclical, and highly disturbing and annoying audible noise created by and emitted from the turbines, often described as sounding like an airplane flying overhead that never flies away;

b.      creating vibrations or amplitude modulation of sound pressures or a pulse sensation when the rotating blades of the turbines pass by the turbine pedestal;

c.      creating a shadow flicker/strobe light effect that often covers all of Plaintiff's property and intrudes into Plaintiff's home when the rotating blades of the turbines pass in front of the sun;

d.      disrupting and/or preventing Plaintiffs' ability to entertain guests or relatives, who are unable to visit for extended periods of time due to headaches and sleep disruption caused by the turbines;

e.      creating highly visible glare or glint which emanates from the turbines when they reflect sunlight;

f.      disrupting and obscuring Plaintiff's views and vistas with turning blades, where such vistas were previously unobstructed;

g.      preventing Plaintiff from enjoying normal outdoor family activities on his property such as barbeques, and other recreational activities;

h.      Preventing Plaintiff from keeping his windows open due to persistent noise.

39.    As a direct and proximate result of Defendant's ongoing interference with Plaintiff's use and enjoyment of his property, Plaintiff has suffered and continues to suffer:

a.      an inability to sleep, repeated awakening during sleep, and sleep deprivation;

b.      headaches;

c.      vertigo and/or dizziness;

d.      nausea;

e.      stress and tension;

   f.  fatigue;

   g.  and anxiety and emotional distress.

  40.  The Cottonwood Wind Farm and the impact it has had on Plaintiff's property has thus substantially and unreasonably interfered with Plaintiff's use and enjoyment of his property. On information and belief, Plaintiff's property has decreased and will continue to decrease in value due to its proximity to Defendant's wind turbines, and Plaintiff will be unable to lease or sell his property for its fair market value prior to installation of the turbines.

## CLASS ACTION ALLEGATIONS

  41.  Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), Plaintiff brings this action on behalf of himself and a nationwide class (the "Class") defined as follows:

> The Class: all persons in the United States who reside on and lease or own residential property within three miles of a NextEra wind turbine.

> The Subclass: all persons who reside on and lease or own residential property in the State of Nebraska within three miles of a NextEra wind turbine.

  42.  Expressly excluded from the Class and Subclass are any individuals who have granted Defendant an unexpired license, lease, or easement for the purpose of operating a wind turbine or wind farm on or adjacent to their property; any members of the judiciary or their staff assigned to preside over this matter; any officer, director, or employee of Defendant; and any immediate family members of such officers, directors, or employees.

  43.  **Numerosity:** Upon information and belief, there are approximately hundreds, if not thousands, of members of the Class such that joinder of all members is impracticable. Although the exact number of members of the Class and Subclass is presently unavailable to Plaintiff, the members of the Class and Subclass can be easily identified through Defendant's records and publicly available population data.

44.     **Typicality:** Plaintiff's claims are typical of the claims of the Class members, because the factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class as a result of Defendant's interference with Plaintiff's and the other Class members' use and enjoyment of their properties.

45.     **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

46.     **Commonality & Predominance:** Numerous common questions of law and fact exist as to all members of the Class, and such questions predominate over questions affecting Plaintiff or individual members of the Class. Common questions for the Class include, but are not limited, to the following:

(a)     Whether the effects of Defendant's wind farms, including disturbing and incessant noise, vibrations, shadow flicker and strobe lighting, which have caused nausea, headaches, sleep deprivation, vertigo, dizziness, anxiety, and diminution of property values, among other harms, are a private nuisance;

(b)     Whether Defendant's invasion of Plaintiff's and the other putative Class members' interests in the private use and enjoyment of their lands was done knowingly and intentionally;

(c)     Whether Defendant, as the entity that owns, operates, and constructs its wind

turbines and wind farms, Defendant knew or should have known of its turbines' propensity to generate loud and invasive noise, vibrations, shadow flicker, and to have other negative effects on individuals' health, comfort, and peace of mind

(d)     Whether Defendant assumed a duty of care owed to Plaintiff and the other putative Class members when it constructed wind turbines and/or wind farms near their residences;

(e)     Whether Plaintiff and the other members of the Class are entitled to monetary, restitutionary, or other remedies, and, if so, the nature of such remedies; and

(f)     Whether Defendant should be enjoined from engaging in such conduct in the future.

47.     **Superiority:** Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

48.     Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

### COUNT I
### Private Nuisance
### (on behalf of Plaintiff and the other Class members)

49.     Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

50.     As explained above, Defendant's construction and operation of wind turbines and

wind farms near Plaintiff's and the other putative Class members' properties has caused a substantial and unreasonable invasion of Plaintiff's and the other putative Class members' interests in the private use and enjoyment of their lands.

51.     By continuing to operate its wind turbines and wind farms, Defendant continues to substantially and unreasonably interfere with the property interests of Plaintiff and the other putative Class members by, among other things, subjecting them and their guests to disturbing and incessant noise, vibrations, shadow flicker and strobe lighting, which have caused nausea, headaches, sleep deprivation, vertigo, dizziness, anxiety, and diminution of property values, among other harms.

52.     Defendant's invasion of Plaintiff's and the other putative Class members' interests in the private use and enjoyment of their lands was done knowingly and intentionally. At all relevant times, Defendant was aware of its turbines' proximity to Plaintiff's and the other putative Class members' lands. Defendant knew or should have known that by siting its wind turbines in such close proximity to the Plaintiff's and the other putative Class members' properties that the turbines' noise, vibrations, shadow flicker, and strobe lighting would invade the homes and properties of Plaintiff and the other putative Class members and thus interfere with their use and enjoyment of their properties. Such siting was therefore intentional and unreasonable, negligent, and reckless.

53.     Further, as the entity that owns, operates, and constructs its wind turbines and wind farms, Defendant was aware or should have been aware of its wind turbines' propensity to generate loud and invasive noise, vibrations, shadow flicker, and to have other negative effects on individuals' health, comfort, and peace of mind.

54.     Defendant's invasions into Plaintiff's and the other putative Class members' use

and enjoyment of their properties are such as to cause actual physical discomfort to one of ordinary sensibilities. Defendant operates its wind turbines and wind farms in a way that is offensive and intolerable, and out of character for the normally quiet, residential nature of the areas where Plaintiff's and the other putative Class members' properties are located.

55.     To the extent that Defendant's wind turbines and wind farms emit noise that exceeds levels prescribed under local zoning laws in the jurisdictions where Plaintiff and the other putative Class members reside, Defendant's continued operation of wind turbines and wind farms constitutes a nuisance *per se*.

56.     Even if Defendant's wind turbines and wind farms fully complied with local zoning laws, it would not excuse the nuisance caused by Defendant's operation of its wind turbines and wind farms, because Defendant knows and understands the harms and negative effects that its turbines can have on nearby residents, and it nonetheless sited its turbines too close to Plaintiff's and the other putative Class members' property.

57.     As a direct and proximate result of Defendant's misconduct described herein, Plaintiff and the other putative Class members have suffered actual monetary damages, pecuniary losses, and other significant harms, including physical harm, anxiety and emotional distress, disruption of their lives, and loss of the use and enjoyment of their properties, all of which have ascertainable value to be proven at trial.

**COUNT II**
**Negligence**
**(on behalf of Plaintiff and the other Class members)**

58.     Plaintiff incorporates by reference the allegations in paragraphs 1 – 48 as if fully set forth herein.

59.     Defendant assumed a duty of care owed to Plaintiff and the other putative Class

members when it constructed wind turbines and/or wind farms near their residences. As the entity that owns, operates, and constructs its wind turbines and wind farms, Defendant knew and could reasonably foresee that construction and operation of its turbines would interfere with Plaintiff's and the other putative Class members' use and enjoyment of their properties.

60.     Defendant's duty of care obligated it to exercise reasonable care by (1) mitigating the noise, vibrations, and infrasound made by its turbines; (2) disabling its turbines during times of day when excessive noise and shadow flicker are an issue; and (3) siting its turbines far enough away from Plaintiff's and the other putative Class members' residences so as to not have negative effects on individuals' health, comfort, and peace of mind.

61.     Defendant breached its duty of care owed to Plaintiff and the other putative Class members users as described herein by, among other things, siting its wind farms too close to Plaintiff's and the other putative Class members' properties and failing to mitigate the shadows and noise emissions from its turbines, subjecting Plaintiff and the other putative Class members and their guests to disturbing and incessant noise, vibrations, shadow flicker and strobe lighting, which have caused nausea, headaches, sleep deprivation, vertigo, dizziness, anxiety, and diminution of property values, among other harms

62.     As a direct and proximate result of Defendant's misconduct described herein, Plaintiff and the other putative Class members have suffered actual monetary damages, pecuniary losses, and other significant harms, including physical harm, anxiety and emotional distress, disruption of their lives, and loss of the use and enjoyment of their properties, all of which have ascertainable value to be proven at trial.

WHEREFORE, Plaintiff, on his own behalf and on behalf of the other Class members, prays for the following relief:

A.    an order certifying the proposed Class as defined above and appointing Plaintiff as the Class representative;

B.    an award of actual and compensatory damages in an amount to be determined at trial;

C.    an order permanently enjoining Defendant from continuing to operate its wind turbines and wind farms in ways that unreasonably interfere with Plaintiff's and the other Class members' use and enjoyment of their property;

D.    such preliminary and other equitable or declaratory relief as the Court deems appropriate;

E.    such other and further relief as the Court deems reasonable and just.

Dated: March 1, 2019                    Respectfully submitted,

KEVIN KOHMETSCHER, individually and on behalf of other similarly situated individuals.

By: /s/ David P. Healy
One of Plaintiff's Attorneys

David P. Healy (0940410)
DUDLEY, SELLERS, HEALY, HEATH
  & DESMOND, PLLC
SunTrust Financial Center
3522 Thomasville Rd., Suite 301
Tallahassee, Florida 32309
Tel: 850.222.5400
Fax: 850.222.7339
dhealy@davidhealylaw.com

Myles McGuire (*pro hac vice* to be filed)
Paul Geske (*pro hac vice* to be filed)
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
pgeske@mcgpc.com

*Counsel for Plaintiff and the putative class*