UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-80281-Civ-Altman/Brannon

KEVIN KOHMETSCHER and MICHELLE KOHMETSCHER, individually and on behalf of similarly situated individuals,

    Plaintiffs,

v.

NEXTERA ENERGY RESOURCES, LLC, a Delaware limited liability company, and COTTONWOOD WIND PROJECT, LLC, a Delaware limited liability company,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

THIS CAUSE is before this Court on Plaintiffs' Renewed Motion for Preliminary Injunction ("Renewed Motion"). [DE 57]. Defendants responded [DE 60] and Plaintiffs replied [DE 66]. The Honorable Roy K. Altman referred the Motion to the undersigned. [DE 79]. Upon thorough and careful review of the record, oral argument of counsel, and applicable law, the undersigned respectfully **RECOMMENDS** that the Motion [DE 57] be **DENIED**, for the reasons set for below.

    **I.**    **FINDINGS OF FACT**

**A.**    **Introduction**

    1.    Kevin and Michelle Kohmetscher's ("Plaintiffs") live with their minor children at 2034 Rd. 1900, Blue Hill, Webster County, Nebraska ("property") in a single-family home on eleven acres of land. [DE 56 ¶ 35; DE 57-1 ¶ 2]. Plaintiffs own the property. [DE 57-1 ¶ 2].

1

    2.      Defendant, NextEra Energy Resources, LLC ("NextEra"), is the largest wind energy generator in the world, operating more than 100 wind energy facilities (a collection of wind turbines) across the United States through a nationwide network of subsidiaries which operate as a single, national organization. [DE 56 ¶¶ 1-2, 43; DE 67 ¶¶ 1-2].

    3.      Defendant, Cottonwood Wind Project, LLC, ("Cottonwood") is a subsidiary of NextEra. [DE 56 ¶ 1, DE 67 ¶ 1].

    4.      The Nebraska Cottonwood Wind Energy Facility ("wind farm") is owned and operated by Cottonwood and the membership interests of Cottonwood are owned by NextEra through one of their affiliates. [DE 56 ¶ 53; DE 67 ¶53].

    5.      The wind farm, which is miles-long and comprised of forty wind turbines, began construction in or about mid-2017 and became commercially operational in or about November 2017. [DE 56 ¶¶ 37-38; DE 57-1 ¶ 5; DE 67 ¶¶ 37-38]

    6.      According to Mr. Kohmetscher, the property, which has been in the family for three generations, is adjacent to the wind farm, and has wind turbines located to the east, south, and west, with the nearest one located approximately 1,300 feet from their property line. [DE 57-1 ¶¶ 3, 5].

**B.**    **Pre-Suit**

    **i.**      **Public Hearing**

    7.      Prior to construction of the wind farm, a pre-advertised public hearing was held on March 17, 2015, in Webster County for a conditional use permit application by Cottonwood. [DE 95-1, at 1].

8. Present at this hearing were the Board of Commissioners, the Zoning Administrator, NextEra representatives, and various members of the public. [DE 95-1, at 1]. Any member of the public could attend. [DE 95-1, at 1].

9. The members of the public gave testimony concerning locations of turbines, potential effects on the surrounding habitat and on people's health, and what protective measures may be needed. [DE 95-1, at 1].

10. After the public testimony, the Project Manager for NextEra discussed the location of turbines, construction timeframes, proposed protective measures, and urged non-participating and participating members to contact NextEra regarding the project. [DE 95-1, at 1].

11. The conditional use permit application was found to have met all required Webster County Regulations and construction of up to sixty-six turbines was approved by the Board of Commissioners, with the following conditions: 1) Cottonwood will follow all Webster County Planning and Zoning handbook regulations in addition to the regulations listed in NextEra's application; 2) NextEra must pay for post construction studies to ensure zoning regulations are being adhered to; 3) "NextEra must contact all property owners within one mile of turbines and offer the standard participation agreement prior to construction." [DE 95-1, at 2; DE 103 ¶ 5].

12. After the public hearing and before starting construction, Cottonwood conducted both a Sound Level Assessment Report [DE 95-2], dated May 9, 2017, and a Shadow Flicker Analysis Report [DE 95-3], dated May 15, 2017. Post-construction, Cottonwood issued a report, dated June 13, 2018 based on its Sound Level Compliance Evaluation from the winter and spring of 2018. [DE 95-4].

13.     All three reports identify Cottonwood as an affiliate of NextEra and as the developer of the wind farm. [DE 95-2, at 3; DE 95-3, at 3; DE 95-4, at 4].

14.     According to the Sound Level Assessment Report, which used wind farm data provided by Cottonwood, the sound levels modeled were within the range permitted from a wind energy conversion system as specified by Section 609 of the Zoning Resolution of Webster County, Nebraska [DE 95-2, at 3, 8].

15.     Figure 5-1 of the report showed the proposed locations for each wind turbine. [DE 95-2, at 13].

16.     According to the Shadow Flicker Analysis Report, the county's shadow flicker limit outlined in Section 609 of the Zoning Resolution, does not apply since the "closest residence to a proposed wind turbine is approximately 1,490 feet from the base of the wind turbine," and there is no shadow flicker limit for occupied buildings beyond 1,000 feet from a wind turbine. [DE 95-3, at 14].

17.     Figure 4-1 of the report showed the proposed locations for each wind turbine. [DE 95-3, at 10].

18.     The Sound Level Compliance Evaluation Report states that the results of the evaluation show that the sound levels do not surpass the Webster County sound level limit. [DE 95-4, at 4].

19.     According to the report, the closest turbine to the Plaintiffs' property, wind turbine #22, is 1470 feet away. [DE 95-4, at 15]. The report concludes that wind turbine #22 is in compliance with the zoning regulation with respect to sound. [DE 95-4, at 15, 34].

20. Figure 2-1 of the report shows the actual placement of each wind turbine [DE 95-4 at 6].

### ii. Negotiations

21. According to Mr. Kohmetscher, prior to construction, Plaintiffs received a letter in April 2017, by certified mail from David Levy of the law firm Baird Holm, LLP, which contained an offer for a participation agreement and a compensation agreement ("offer of participation"), where in exchange for acquiring a lease and easement to construct and operate the turbines, Defendants would compensate Plaintiffs with an annual installment of $1,500. [DE 66-1, Ex. A]. The offer of participation sent in April 2017 indicated that Cottonwood was the company planning the wind farm, and that it was an affiliate of NextEra. [DE 66-1, Ex. A].

22. Defendants also sent Plaintiffs a revised offer of participation sometime in 2018, which increased the proposed annual installment to $12,000. [DE 66-1, Ex. B].

23. The participation agreement Plaintiffs received in April 2017 indicated that the agreement would be between the Plaintiffs and Cottonwood. [DE 66-1, Ex. A].

24. Negotiations regarding the agreements started as early as April 2017 and continued as late as February 16, 2019. [DE 66-1 ¶ 2-5].

25. According to Plaintiffs' discovery responses, they have no discoverable documents regarding any communication or formal complaint lodged with any local, state, or federal agency regarding the wind farm or the impact of the windfarm to their property. [DE 82-1 at 6].

## C.  Litigation

26. Mr. Kohmetscher filed a class action complaint on March 1, 2019, alleging two counts against Defendant NextEra Energy, Inc. for (I) private nuisance and (II) negligence. [DE 1].

27. He filed an amended complaint on April 30, 2019 [DE 20] which added NextEra Energy Resources, LLC, NextEra Energy Partners, LP, and Cottonwood Wind Project, LLC, as Defendants.

28. Defendant, NextEra Energy, Inc., filed a motion to dismiss the first amended complaint, on May 13, 2019. [DE 22]. In it, NextEra asserted that 1) Plaintiff violated Fed. R. Civ. P. 8 by indiscriminately lumping all the defendants together, 2) Plaintiff is unable to plead that NextEra Energy, Inc., is liable for the alleged conduct of its subsidiaries, and 3) Plaintiff should be required to join Mrs. Kohmetscher, who is co-owner of their property, as an indispensable party. [DE 22 at 1].

29. Defendants, NextEra Energy Resources, LLC, NextEra Energy Partners, LP, and Cottonwood Wind Project, LLC, filed their own motion to dismiss the first amended complaint, on July 2, 2019. [DE 37]. They requested, in part, that NextEra Energy, Inc., and NextEra Energy Partners, LP, be dismissed as Defendants since they have no alleged direct ownership or operational control of the wind farm, and that Mrs. Kohmetscher be joined as an indispensable party. [DE 37 at 1-2].

30. A hearing on these motions was held on December 3, 2019. [DE 54].

31. The day before the hearing, on December 2, 2019, Mr. Kohmetscher filed a motion for preliminary injunction. [DE 52]. He requested "NextEra to reasonably abate its nuisance . . . by temporarily deactivating the turbine located nearest to Plaintiff's home during early

morning hours . . . and to adopt other, reasonable measures to mitigate the noise cause by the turbines, such as temporarily deactivating the turbines during times [of bad weather or wind]." [DE 52 at 2-3].

32. The first amended complaint was dismissed without prejudice. [DE 55]. The motion for preliminary injunction was also denied without prejudice. [DE 55].

33. The second amended complaint, filed on December 27, 2019, added Mrs. Kohmetscher as a plaintiff, removed NextEra Energy Inc., and NextEra Energy Partners, LP, as Defendants, and added two new sections: 1) allegations as to agency & direct participation, and 2) allegations as to joint venture. [DE 56 at 1, 11-12].

34. On December 31, 2019, Plaintiffs filed the instant Renewed Motion [DE 57], which requested identical relief as the first motion [DE 52].

35. As part of their Renewed Motion, Plaintiffs have submitted seven video recordings. [DE 57, Ex. 1-7]. The video recordings depict the shadow flicker from the nearest Cottonwood Wind Facility turbine recorded from Plaintiffs' yard [DE 57, Ex. 1, 4, 5, 7], and from inside their home [DE 57, Ex. 2, 3, 6].

36. In all the videos, the shadow flicker is apparent. [DE 57, Ex. 1-7]. In the videos recorded outside the home, the noise produced by the turbines is also apparent. [DE 57, Ex. 1, 4, 5, 7].

37. Plaintiffs allege the nearest turbine is located approximately 1,300 feet from their property line, against the alleged industry recommendation. [DE 57-1 ¶¶ 3, 5].

38. Plaintiffs allege they have suffered ongoing harm caused by the shadow flicker and noise created by the turbine closest to their property. [DE 56 ¶¶ 40-41; DE 57 at 2]. Specifically,

"Plaintiffs experience disturbing and incessant noise, vibrations, shadow flicker and strobe lighting—which have caused nausea, headaches, sleep deprivation, vertigo, dizziness, and anxiety. These harms have greatly reduced Plaintiffs' quality of life and continue to cause harm by substantially interfering with their interests in use and enjoyment of their property." [DE 57 at 12] (internal citations omitted).

39. Mr. Kohmetscher states that "the turbines create a sustained, loud, and disturbing noise that sounds like an airplane or helicopter flying overheard that never flies away…[which] prevents me from keeping my windows open…." [DE 57-1 ¶¶ 6-7].

40. Mr. Kohmetscher also states that "on November 26, 2019, at approximately 8:30PM, the roaring noise from the turbines was so loud that I could not hear my own television." [DE 66-1 ¶ 6]. He claims to have called the Defendants to complain and was told by an employee that "the noise was due to the buildup of ice on the turbines' blades, which causes excessive drag and creates a loud noise similar to a helicopter or jet engine." [DE 66-1 ¶ 6].

41. Mr. Kohmetscher states that "[t]he shadow flicker is most intense around 8-9a.m. During this time, the flickering shadows give me headaches, cause vertigo and dizziness, and make me nauseous." [DE 57-1 ¶ 9].

42. In discovery, Plaintiffs responded that they have 1) no discoverable medical records regarding any physical or mental harm [DE 82-1 at 8-10]; 2) no discoverable documents to support their assertion that wind turbines can cause the physical and mental health effects alleged [DE 82-1 at 17]; and no discoverable documents at this time that show any diminution in the value of their property [DE 82-1 at 10-11].

43. After the renewed motion for preliminary injunction was referred to the undersigned [DE 79], the the parties were ordered to file a Joint Status Report [DE 80], which they did [DE 82].

44. The Court heard oral argument on the Renewed Motion on May 21, 2020. [DE 93].

45. Plaintiffs' counsel argued that no medical records exist because the types of ailments caused by the turbines are not the type that can be resolved through medical treatment. [DE 102, pg. 31, at line 15-18].

46. Defense counsel argued that at no time during the negotiations did "Plaintiffs make any effort to seek modifications to the placement of the wind turbines or revisions to the County Regulations," and "there was never a discussion of limiting the operation of any of the wind turbines…or negotiations regarding the claims asserted in the Second Amended Complaint." [DE 103 ¶¶ 16, 19-20].

47. Defense counsel proffered that they provided an affidavit to Plaintiffs on April 3, 2019, informing them that Cottonwood was the operator of the wind turbines and the proper Defendant. [DE 102, at p. 21, line 10-13].

48. Defense counsel submitted that all reports [DE 95-1, 95-2, 95-3, 95-4] are part of the public record. [DE 102, at p. 16 line 19-23].

49. Defendants' position is that while it is feasible to shut down the turbine in question without shutting down the other turbines, it would be extraordinarily expensive. [DE 102, at p. 14, line 15-25].

50. In Defendants' notice of filing cost and expense declaration, the Vice President of the Power Generation Division, Wind Operations, of NextEra, stated that the total cost and loss

of revenue to shut down a single turbine for 3 hours daily for an entire year would be approximately $85,328.75. [DE 98 at 6].

## II.    CONCLUSIONS OF LAW

Plaintiffs seek entry of a preliminary injunction "requiring Defendants to reasonably abate its nuisance as to Plaintiffs by temporarily deactivating the turbine located nearest to Plaintiffs' home during early morning hours when excessive noise and shadow flicker are most bothersome, and to adopt other, reasonable measures to mitigate the noise caused by the turbines, such as temporarily deactivating the turbines during times when weather or wind conditions cause the turbines to make excessive noise."

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989); *see also Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247-48 (11th Cir. 2016) ("failure to meet even one [factor] dooms [the] appeal") (citation omitted). Those four factors are: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

"A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would…make preliminary injunctive relief improper"); *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of*

*Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) ("When the movant fails to prove irreparable harm, courts need not analyze the other elements of injunctive relief"). The showing of irreparable injury "must be neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors*, 896 F.2d at 1285.  Because it is clear that Plaintiffs have not established irreparable injury, they are not entitled to the relief requested.

Plaintiffs contend that the noise and shadow-flicker "has caused nausea, headaches, sleep deprivation, vertigo, dizziness, and anxiety."  Plaintiffs argued that these harms have "greatly reduced their quality of life and continue to cause harm by substantially interfering with their interests in use and enjoyment of their property." Plaintiffs also argue their unique real property interest will become worthless or lose significant value.

Defendants position is that there can be no showing of irreparable harm because of Plaintiffs' delay in filing their motion for preliminary injunction. Defendants contend that Plaintiffs have not justify the delay in seeking the requested injunction, regardless of when the delay is measured—construction of the wind farm commenced in mid-2017, the turbines became operational in November 2017, the initial complaint was filed in March 2019, yet the initial motion for preliminary injunction was filed in December 2019.  At the hearing, Defendants elaborated on the delay, pointing out that the conditional permit was issued in 2015 as the result of a public hearing, therefore, Plaintiffs were on notice of the potential harm since 2015. Defendants assert that Plaintiffs have provided no evidence to support their claims of physical and mental health effects or loss of value to real estate.

The Court finds that the evidence does not establish irreparable harm caused by the turbines.  The evidence to support Plaintiffs' claims of irreparable harm are Mr. Kohmetscher's

11

declarations and his recordings of the noise and shadow flicker. To be clear, the video recordings depict noticeable noise and shadow flicker. [DE 57, Ex. 1-7]. The shadow flicker within the home is particularly irritating and unsettling. The Court has no reason to discredit Mr. Kohmetscher's declaration that he experiences some, perhaps substantial, physical and mental discomforts as a result of the noise and shadow flicker. Plaintiffs have not, however, established irreparable harm. Plaintiffs acknowledged that they have no discoverable medical records [DE 82-1 at 8-10] or documents to support the assertion that wind turbines can cause the physical and mental health effects alleged [DE 82-1 at 17]. Not only is there no medical evidence to show these harms are irreparable, but Mr. Kohmetscher's own declaration fails to make this point as well. Plaintiffs also acknowledged that they have no discoverable documents that show any diminution in the value of their property. [DE 82-1 at 10-11]. Plaintiffs did not take steps to prevent the construction of the wind farm. And although Mr. Kohmetscher states that the use and enjoyment of his property is harmed by the wind farm, there is no evidence that Plaintiffs made an effort to make home improvements to eliminate or minimize the effects of the wind turbines or that this harm is otherwise irreparable—the shadow flicker is most intense for an hour a day [DE 57-1, ¶ 9], and they are not able to entertain in the backyard [DE 57-1, ¶ 10-11].

Moreover, the delay in seeking an injunction seriously undermines Plaintiffs' argument of irreparable harm. As discussed by the Eleventh Circuit, "[a] delay in seeking a preliminary injunction of even only a few months – though not necessarily fatal – militates against a finding of irreparable harm…Indeed, the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on the merits. *Wreal, LLC*, 840 F.3d at 1248 (affirming the district court's ruling that the plaintiff's

"unexplained five-month delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury."). When evaluating the impact of delay in establishing irreparable harm, courts look not only at the delay in seeking an injunction after filing the complaint, but also at the surrounding circumstances of the harm and filing the complaint. *See Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2017 WL 4919222, at *5 (S.D. Fla. Oct. 31, 2017) ("[I]n determining whether a delay in seeking a preliminary injunction is fatal, "(1) a plaintiff cannot delay in filing a complaint after discovering a potential infringer, and (2) a plaintiff must move quickly in filing a motion for a preliminary injunction once a complaint has been filed.").

While it is true that Plaintiffs may have known about the wind farm and its potential impact on their property as early as the March 17, 2015 public hearing [DE 95-1, at 1], there is no proof that Plaintiffs knew about the meeting, attended, or understood the impact to their property. Regardless, construction of the wind farm began in mid-2017 and became operational in November 2017. [DE 56 ¶¶ 37-38; DE 57-1 ¶ 5; DE 67 ¶¶ 37-38]. Even more conservatively, Plaintiffs were engaged in negotiations until February 2019. [DE 66-1 ¶ 2-5]. Yet, the complaint filed in March 2019 did not include a count for injunctive relief nor was it accompanied by a motion for injunctive relief, and the same is true for the April 2019 first amended complaint. Plaintiffs did not file the initial motion for injunction until December of 2019.

In rebutting the impact of delay, Plaintiffs argue that the delay between their initial complaint [DE 1] and the filing of their first motion for preliminary injunction [DE 52], was justified because they were negotiating a settlement and the pending motions to dismiss would make an injunction procedurally pointless. Plaintiffs' argument here is unpersuasive.

Plaintiffs failed to show why the delay was justified due to negotiation and there is also no reason to believe that the parties were negotiating to get Defendants to cease operation of the closest turbine. *See, e.g.*, *Menudo Int'l, LLC*, No. 17-21559-CIV, 2017 WL 4919222, at *6 ("no showing here why a one-year delay was required for Plaintiff to negotiate a resolution with Defendants. If Plaintiff was concerned about a harm truly believed to be irreparable, Plaintiff would have acted swiftly to protect itself, even in the midst of negotiating a potential settlement") (internal quotations omitted).

As for the pending motions to dismiss, the record evidence establishes that Plaintiffs should have known the proper parties to the lawsuit based on their pre-suit negotiations. Regardless, even assuming that it was procedurally pointless to seek a preliminary injunction while the two motions to dismiss were pending, there is still an unexplained two-and-a-half-month period between the filing of their initial complaint and the Defendants' first motion to dismiss. *See Pals Grp., Inc. v. Quiskeya Trading Corp.*, 2017 WL 532299, at *6 (S.D. Fla. Feb. 9, 2017) ("[C]ourts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months") (internal quotation and citation omitted).

And as already explained, Plaintiffs were exposed to effects of the wind farm since it became operational in November 2017, at the latest. Considering the amount of time Plaintiffs' had been already exposed to flicker and noise from the turbine at the time of filing this lawsuit, there is no reasonable explanation for the delay in seeking an injunction, and this delay seriously undermines Plaintiffs' argument of irreparable harm.

### III.  **RECOMMENDATION**

14

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiffs' Renewed Motion for Preliminary Injunction [DE 57] be **DENIED**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Upon proper motion, the parties may seek a shortened objection period. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2018); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE AND SUBMITTED at West Palm Beach, Florida this 23rd day of July 2020.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE