**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-80281-CIV-ALTMAN/Brannon**

**KEVIN KOHMETSCHER** *and*
**MICHELLE KOHMETSCHER**,
*individually, and on behalf of similarly situated individuals*,

    *Plaintiffs*,
v.

**NEXTERA ENERGY RESOURCES, LLC,**
*and* **COTTONWOOD WIND PROJECT, LLC**,

    *Defendants*.
_____/

## ORDER

Before the Hon. Roy K. Altman:

The Plaintiffs, Kevin and Michelle Kohmetscher, live in a single-family home in the small, rural town of Blue Hill, Nebraska. That home, and the plot of land on which it is located, has been passed down in the Plaintiffs' family for generations. The Defendants, the world's largest wind energy generator and its Nebraska subsidiary, constructed a wind turbine facility in Blue Hill that became commercially operational in November 2017.

On March 1, 2019, the Plaintiffs filed their initial class action lawsuit. But they waited until December 2019—over two years after the wind turbines became operational—to move for a preliminary injunction. In that motion, which largely mirrors the renewed motion at issue here, the Plaintiffs allege that, without injunctive relief, they will face irreparable harm—e.g., mental and physical injuries, diminution in the value of their property, and an inability to host their guests— from the noise and "shadow flicker" created by the Defendants' wind turbines. The Plaintiffs thus ask the Court to grant their motion, to order the Defendants to shut down the turbine that is closest

1

to their property for three hours every morning, and to take additional measures to mitigate the noise and "shadow flicker" from all of the Defendants' wind turbines. After careful review, the Court **DENIES** the Plaintiffs' motion

## THE FACTS

The Plaintiffs own and live in a single-family home on an eleven-acre plot of land in Blue Hill, Webster County, Nebraska (the "Property"). *See* Second Am. Compl. (the "SAC") [ECF No. 56] ¶ 35; Declaration of Kevin Kohmetscher ("Kohmetscher Decl.") [ECF No. 57-1] ¶ 2. The Property has been in the Kohmetscher family for generations. SAC ¶ 36; Kohmetscher Decl. ¶ 3.

The Defendant, NextEra Energy Resources, LLC ("NextEra"), is the largest wind energy generator in the world and operates over 100 wind energy facilities nationwide. SAC ¶¶ 1–2. Each wind energy facility includes a collection of wind turbines that, put simply, rapidly rotate to create energy. *Id.* ¶ 2. The second Defendant, Cottonwood Wind Project, LLC ("Cottonwood"), is a subsidiary of NextEra. *Id.* ¶ 1. Together, the Defendants own and operate the Nebraska Cottonwood Wind Energy Facility (the "Cottonwood Facility") in Webster County, Nebraska. *Id.* ¶ 38. The Cottonwood Facility, which became commercially operational in November 2017, spans several miles and has over forty wind turbines. *Id.* ¶¶ 37–38.

In April 2017, the parties began negotiating over the Cottonwood Facility. *See* Supplemental Declaration of Kevin Kohmetscher ("Kohmetscher Supp. Decl.") [ECF No. 66-1] ¶ 2. During these negotiations, the Defendants offered the Plaintiffs both a "participation agreement" and a "compensation agreement," through which the Defendants would pay the Plaintiffs an annual installment fee of $1,500 on top of a one-time "signing bonus" of $2,500. *Id.* ¶ 3, Ex. A. In exchange, the Plaintiffs would grant the Defendants a lease and easement over the Property, so that the Defendants could build and operate the Cottonwood Facility. *Id.* The parties continued

negotiating for years, "well into February 2019." *Id.* ¶ 5. Although the Defendants later increased their offer from $1,500 to $12,000 annually, the negotiations fell apart in mid-February 2019, and no lease or easement agreement was ever executed. *Id.* ¶¶ 4–5, Ex. B.

Shortly thereafter, on March 1, 2019, Mr. Kohmetscher filed his class action complaint, in which he asserted claims of private nuisance and negligence against NextEra Energy, Inc. *See* Compl. (the "Initial Complaint") [ECF No. 1]. On April 30, 2019, almost two months later, Mr. Kohmetscher filed a first amended class action complaint, adding NextEra, NextEra Energy Partners, LP, and Cottonwood as defendants. *See* First Am. Compl. (the "FAC") [ECF No. 20]. On May 13, 2019, some two-and-a-half months after the Initial Complaint was filed, NextEra Energy Inc. moved to dismiss. *See* First Mot. to Dismiss [ECF No. 22]. A few weeks later, the remaining defendants—NextEra, NextEra Energy Partners, LP, and Cottonwood—likewise moved to dismiss. *See* Second Mot. to Dismiss [ECF No. 37].

On December 3, 2019, this Court held a hearing on the Defendants' motions to dismiss. *See* Minute Entry for Motion Hearing [ECF No. 54]. On December 2, 2019, the day before the hearing, the Plaintiffs moved for a preliminary injunction, alleging that the noise and flickering light—which they characterized as a "shadow flicker"—from the Defendants' wind turbines were causing them irreparable harm. *See generally* Mot. for Preliminary Injunction (the "Initial Motion") [ECF No. 52]. In that Initial Motion, the Plaintiffs asked the Court to order the Defendants to pause operations of the wind turbine closest to the Property during early morning hours and to take reasonable measures to decrease the turbines' noise and "shadow flicker." *Id.* at 15.

Ultimately, this Court dismissed Mr. Kohmetscher's First Amended Complaint without prejudice and denied the Initial Motion. *See* Order Dismissing FAC [ECF No. 55]. Importantly,

3

during the hearing, the Court explained to Mr. Kohmetscher why it was denying the Initial Motion: "Secondly and probably just as importantly, the second element is irreparable threat of harm. I think the complaint—I think this case has been going on for [nine] months, right? So, [nine] months and no request for an injunction suggests to me that there's no irreparable harm. There's harm, but no irreparable harm, at least not from the plaintiff's perspective, at least there hasn't been a demonstrated urgency over the last [nine] months." *See* Tr. of Dec. 3, 2019 Hearing [ECF No. 59] at 19–20.[1]

On December 27, 2019, Mr. Kohmetscher filed his (now-operative) Second Amended Complaint, which added Mrs. Kohmetscher as a plaintiff, *see* SAC ¶ 14, and which removed NextEra Energy Inc. and NextEra Energy Partners, LP, as defendants, *see id.* at 1 n.1. Just four days later, on December 31, 2019, the Plaintiffs filed their Renewed Motion for Preliminary Injunction, along with seven video files—which purport to capture both the "shadow flicker" and the noise emanating from the Cottonwood Facility's turbines. *See* Renewed Mot. for Preliminary Injunction (the "Renewed Motion") [ECF No. 57, Exs. 1–7]. The Court referred the Renewed Motion to Magistrate Judge David L. Brannon for a Report and Recommendation. *See* Order Referring Motion [ECF No. 79].

In the Renewed Motion, which (largely) mirrors the Initial Motion, the Plaintiffs argue that the Cottonwood Facility's wind turbines—in particular, the turbine nearest to their Property, which the Plaintiffs allege is roughly 1,300 feet away—create both a "sustained, loud, and disturbing noise that sounds like an airplane or helicopter flying overhead that never flies away" and a "shadow flicker," which is "similar to a constant strobe light." Renewed Motion at 2–3;

---

[1] During the December 3rd hearing, the Court estimated that the gap between the filing of the Initial Complaint and the Initial Motion was seven months. In fact, however, the interval was nine-months long.

4

Kohmetscher Decl. ¶¶ 7–8. The Plaintiffs complain that the noise and "shadow flicker" from the wind turbines "have caused nausea, headaches, sleep deprivation, vertigo, dizziness, and anxiety," "have greatly reduced Plaintiffs' quality of life[,] and continue to cause harm by substantially interfering with [the Plaintiffs'] interest in use and enjoyment of their property." Renewed Motion at 12; *see also* Kohmetscher Decl. ¶¶ 7–11. As redress, the Plaintiffs ask the Court to order the Defendants to "(1) temporarily deactivate the turbine nearest to Plaintiffs' property from the southeast during the hours of 7-10 a.m. [and] (2) abate the nuisance caused by the noise of the Cottonwood Wind Facility by adopting reasonable measures to minimize excessive noise, including temporarily deactivating the turbines during times when weather or wind conditions cause drag on the turbines' blades . . . ." Renewed Motion at 15.

After holding a telephonic hearing on the Renewed Motion, *see* Tr. of Telephonic Discovery Hearing [ECF No. 102], the Magistrate Judge issued a Report and Recommendation ("R&R"), in which he recommended that this Court deny the Renewed Motion because the Plaintiffs failed to establish irreparable harm. *See* R&R [ECF No. 105]. Specifically, the Magistrate Judge found that the Plaintiffs' irreparable-harm arguments were significantly undermined both by their delay in seeking an injunction and by their failure to submit corroborative evidence of physical harm. *See id.* at 11–12.

The Plaintiffs timely objected to the R&R, *see* Plaintiffs' Objections to Magistrate Judge's R&R ("Objections") [ECF No. 108]; the Defendants responded, *see* Response [ECF No. 112]; and the Plaintiffs replied, *see* Reply [ECF No. 113]. The Court has carefully reviewed the R&R, the Parties' filings, the record, and the governing law. For the reasons set out below, the Court now **ADOPTS** the R&R in full and **DENIES** the Plaintiffs' Renewed Motion.

## STANDARD OF REVIEW

When a magistrate judge's "disposition" has been properly objected to, district courts must review that disposition *de novo*. FED. R. CIV. P. 72(b)(3). But, when no party has timely objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress' intent was to require *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "A party filing objections must specifically identify those findings objected to and the specific basis for such objections." *See Hidalgo Corp. v. J. Kugel Designs, Inc.*, No. 05-20476-CIV, 2005 WL 8155948, at *1 (S.D. Fla. Sept. 21, 2005). Therefore, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## THE LAW

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989) (cleaned up). Those four familiar elements are: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief

would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

"A showing of irreparable injury is 'the *sine qua non* of injunctive relief.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (cleaned up) (emphasis added). And that showing of irreparable injury "must be neither remote nor speculative, but actual and imminent." *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *see also Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable."). When the movant fails to prove irreparable harm, courts need not analyze the remaining elements. *See City of Jacksonville*, 896 F.2d at 1285 ("We need not address each element because we conclude that no showing of irreparable injury was made.").

## ANALYSIS

### I.  Delay

The Plaintiffs' failure to move for a preliminary injunction until *more than two years* after the Cottonwood Facility opened in November 2017 weighs strongly against their position on irreparable harm. As the Eleventh Circuit has explained: "A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citing *Siegel*, 234 F.3d at 1176–77). "Indeed, the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.*; *see also Seiko Kabushki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F.Supp.2d 1350, 1356 (S.D. Fla. 2002) (noting that a plaintiff's "dilatory prosecution of its rights somewhat vitiates the notion of irreparable harm . . . and undercuts any sense of urgency . . . .").

The Court agrees with the Magistrate Judge that the Plaintiffs' inexcusable delay in filing their Initial Motion undermines their claim of irreparable harm. *See* R&R at 14. Because the Cottonwood Facility's wind turbines became commercially operational in November 2017, the Plaintiffs had been exposed to their noise and "shadow flicker" for *over two years* before they first sought an injunction (on December 2, 2019). *Id.* at 13–14. Two years is simply too long to wait. *See* Tr. of Dec. 3, 2019 Hearing at 19–20 (noting the Court's concerns over the length of the Plaintiffs' delay).

The Plaintiffs insist that they have given reasonable explanations for their delay. *See* Obj. at 3. So, for example, the Plaintiffs blame their failure to move for a preliminary injunction between November 2017 (when the Cottonwood Facility became operational) and March 1, 2019 (when they filed this lawsuit) on the "pre-suit negotiations regarding settlement and acquisition of a lease and easement over Plaintiffs' property through a Participation Agreement." *Id*. at 16. The Court remains unconvinced.

As a preliminary matter, the Plaintiffs do not challenge the Defendants' suggestion that the parties' negotiations involved only "how much [the Plaintiffs] would be paid for a participation agreement" and did not—as relevant here—include *any* discussion about disabling (even for short periods) the turbine closest to the Plaintiffs' Property. *See* Tr. of Telephonic Discovery Hearing at 18:1–4; *see also* Defendants' Proposed Findings of Fact and Conclusions of Law [ECF No. 103] ¶¶ 16, 19–20; Defendants' Response to Objections [ECF No. 112] at 2–3. For more than two years, in other words, the Plaintiffs were perfectly willing to tolerate the noise and "shadow flicker," so long as the Defendants paid them for the trouble. Indeed, it was only when the Defendants were unwilling to pay the Plaintiffs what the Plaintiffs felt was fair that the wind farm's harm became intolerable. Of course, it is well-settled that "[t]he possibility that adequate compensatory or other

8

corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Given the uncontested history of the parties' negotiations, that principle applies with particular force here.

Nor is the Court persuaded by the Plaintiffs' reliance on *Bagley v. Yale Univ.*, No. 3:13-cv-1890, 2014 WL 7370021 (D. Conn. Dec. 29, 2014). For starters, that unpublished decision from the District of Connecticut is not, as the Plaintiffs claim, *see* Obj. at 19, "virtually identical" to this case. Far from it. The movant in *Bagley* was a professor at Yale University's School of Management ("Yale"). *See Bagley*, 2014 WL 7370021, at *1. In 2008, the movant and Yale entered into a five-year employment contract. *See Bagley v. Yale Univ.*, 42 F.Supp.3d 332, 335–36 (D. Conn. 2014).[2] On May 24, 2012, Yale's dean told the movant that her employment would be terminated, effective December 31, 2014. *Id.* at 337–38. Thereafter, the movant, attempting to overturn her termination, submitted several grievances to Yale, filed complaints with the State of Connecticut's Commission on Human Rights and Opportunities, and even lodged a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 337–39. On December 20, 2013, after those efforts failed, the movant filed her lawsuit, which Yale moved to dismiss. *See Bagley*, 2014 WL 7370021, at *2. Then, almost a year after filing her lawsuit, the plaintiff moved for a preliminary injunction. *Id.* In opposing the motion, Yale argued that the movant's delay in seeking a preliminary injunction weighed against a finding of irreparable harm. *Id.* While the court ultimately denied the motion for a preliminary injunction, it did so for reasons *other than* the movant's delay, explaining that, given Yale's pending motion to dismiss, "the near one-year

---

[2] These two *Bagley* decisions are different. In *Bagley v. Yale Univ.*, No. 3:13-cv-1890, 2014 WL 7370021 (D. Conn. Dec. 29, 2014), the district court denied the movant's motion for a preliminary injunction. In doing so, it incorporated the factual background of the case from a prior ruling denying Yale's motion to dismiss. That prior ruling on the motion to dismiss is the subject of *Bagley v. Yale Univ.*, 42 F.Supp.3d 332 (D. Conn. 2014).

9

interval between Plaintiff filing her complaint and moving for a preliminary injunction is not a 'delay'; it is a sensible ordering of the priorities of litigation. Nor is that interval 'unexplained'; it is the pragmatic consequence of the realities of litigation." *Id.*

The circumstances in *Bagley* differ from the facts of our case in two important respects. *First*, the *Bagley* movant vigorously contested her termination (almost) from the moment she learned of it. As the *Bagley* Court pointed out: "Everything [the movant] has since said, everything she has since done reveals a sense of loss and outrage Shakespearean in its intensity." *Id.* at *3. There is nothing similarly Shakespearean about the Plaintiffs' lack of diligence here. Unlike the *Bagley* movant—who, in addition to petitioning her employer, lodged complaints with both the state and federal governments—the Plaintiffs tried to negotiate a monetary arrangement and, for almost two years, complained to no one. *Second*, the *Bagley* movant sought a preliminary injunction on November 14, 2014, *well over a month before* the irreparable harm—i.e., the termination of her employment—was to take place. The Plaintiffs, by contrast, waited *more than two years after* the noise and "shadow flicker" began (in November 2017) to move for injunctive relief. *Bagley* thus does not support the Plaintiffs' position here.

But, even putting aside the substantial time gap between the commencement of the "irreparable harm" and the filing of the initial complaint, the Plaintiffs still waited *another* nine months before moving for an injunction. The Plaintiffs justify this second delay by arguing that, "[a]s a function of federal practice and procedure, Plaintiffs were unable to file" a motion for preliminary injunction "while Defendants' motions to dismiss were pending, as it would have been procedurally impossible for them to do so." Obj. at 19. This argument is, for two reasons, unpersuasive. *First*, there is nothing "procedurally impossible" about asking for a preliminary injunction while a motion to dismiss is pending. That, after all, is exactly what the Plaintiffs did in

10

this case. Recall that the Plaintiffs filed their Initial Motion the day *before* the Court heard arguments on the still-pending motion to dismiss. *Second*—and in any event—their "impossibility" argument ignores the two-and-a-half-month period between March 1, 2019 (when they filed this lawsuit) and May 13, 2019 (when the Defendants moved to dismiss). *See* R&R at 14 (discussing this point). There was certainly nothing (procedural or otherwise) to stop the Plaintiffs from seeking their injunction during this time—and they never suggest that there was.

In sum, the Plaintiffs' delay in moving for a preliminary injunction belies their claim of irreparable harm.

## II. Lack of Corroborative Evidence

Putting aside the Plaintiffs' unjustified delay in seeking their injunction, the Plaintiffs have also failed to establish irreparable harm. The Magistrate Judge found that, although the Plaintiffs' video recordings "depict noticeable noise and shadow flicker"—and despite Mr. Kohmetscher's declaration that "he experiences some, perhaps substantial, physical and mental discomforts"— the Plaintiffs failed to identify any *irreparable* harm. *See* R&R at 11–12. In arriving at this conclusion, the Magistrate Judge noted the absence of: (1) any medical proof to support the Plaintiffs' claimed mental or physical injuries; (2) any evidence for the proposition that exposure to wind turbines causes the types of injuries the Plaintiffs here complain about; and (3) any documentation evidencing some actual diminution in the Plaintiffs' property value. *Id.* at 12; *see also* Plaintiff Kevin Kohmetscher's Response to Defendant NextEra's First Request for Production of Documents ("Plaintiffs' Discovery Responses") [ECF No. 82-1] at 8–11, 17 (admitting that the Plaintiffs have *none* of this evidence in their possession).

This Court agrees with the Magistrate Judge. Given the lack of corroborative evidence, the Court cannot say—with any degree of certainty—that the Plaintiffs are actually experiencing the injuries they've alleged. Either way, without adducing more than uncorroborated averments of

11

harm, the Plaintiffs have failed to justify "the extraordinary and drastic remedy" they've here requested.

In their Objections, the Plaintiffs advance two principal arguments—both unavailing.[3] *First*, they object to the Magistrate Judge's suggestion that they should have produced some medical documentation in support of their Renewed Motion. *See* Obj. at 10. As the Plaintiffs see it, this is "not a personal injury case," in which they would need to show some irreparable *physical or mental* harm. *Id*. Instead, the Plaintiffs say, this is a property case, in which they have alleged that "the turbines have interfered with their interests in the use and enjoyment of their real property—their personal home—and it is that loss which warrants preliminary injunctive relief." *Id.* at 2, 10.

But, while this is "not a personal injury case," the Plaintiffs bear the burden of "clearly establishing" that, absent an injunction, they will suffer some "irreparable" injury to their person or property. Throughout these proceedings, the Plaintiffs have argued that the Defendants' wind turbines have interfered with their use and enjoyment of their Property. And, in support of this central claim, the Plaintiffs have repeatedly pointed to their alleged physical and mental injuries. *See, e.g.*, Renewed Motion at 5 ("Plaintiffs will suffer irreparable harm absent an injunction because . . . the physical and mental harms that Plaintiffs are suffering—all caused by Defendants' wind turbines—are a constant and immediate burden on Plaintiffs' health and wellbeing."); *id.* at 12 ("Plaintiffs experience disturbing and incessant noise, vibrations, shadow flicker and strobe

---

[3] The Plaintiffs notably do not challenge the Magistrate Judge's findings with respect to their failure to submit (1) evidence that exposure to wind turbines could cause the kinds of ailments they complain about or (2) documentation evidencing some reduction in the Property's value. And the Magistrate Judge's decision to rely—at least in part—on this evidentiary lacuna is not clearly erroneous. *Cf. Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (holding that, when a party does not object to the magistrate judge's R&R, the court "must only satisfy itself that there is no clear error on the face of the record").

lighting—which have caused nausea, headaches, sleep deprivation, vertigo, dizziness, and anxiety. These harms have greatly reduced Plaintiffs' quality of life and continue to cause harm by substantially interfering with their interests in use and enjoyment of their property." (internal citations omitted)); *see also* Tr. of Telephonic Discovery Hearing at 12:7–10 ("There are two types of irreputable [sic] harm that we have identified in the motion . . . and the ongoing physical discomfort due to the effects of the turbines."). It is the Plaintiffs, in short—and not the Magistrate Judge—who made their physical and mental injuries a central part of this case.

In any event, the point is this: Given that the Defendants' wind turbines became commercially operational in November 2017, the Plaintiffs appear to have tolerated the turbines' noise and "shadow flicker" for over two years *before* they moved for a preliminary injunction. One would be justified in supposing that, if the Plaintiffs' physical and mental injuries were indeed "irreparable," the Plaintiffs would have sought some medical or psychological assistance during this two-year period. They might, for instance, have seen a doctor who may have prescribed some medication to remedy the dizziness or the nausea they say they are suffering. The Plaintiffs, however, acknowledge that they have no such proof—no evidence that, besides petitioning this Court, they have done anything to mitigate the harms the turbines have purportedly caused them. *See* Plaintiffs' Discovery Responses at 8–11. This absence of evidence is fatal to their request.

*Second*, the Plaintiffs argue that the R&R is internally inconsistent. In a nutshell, they submit that the Magistrate Judge could not logically have both acknowledged their harm and, simultaneously, recommended that this Court deny their Renewed Motion. *See* Obj. at 12. But there's no inconsistency in saying that, while the Plaintiffs may have suffered *some* harm, that harm—real as it may be—is not *irreparable* (the standard here). Presaging this retort, the Plaintiffs cite the Nebraska Supreme Court for their view that, "[u]nder applicable nuisance law, an invasion

13

or interference with another's private use and enjoyment of his land need only be *substantial* to give rise to a cognizable claim." *Id*. (quoting *Johnson v. Knox Cnty. P'ship*, 728 N.W.2d 101, 108 (Neb. 2007) (cleaned up) (emphasis added)).

But *Johnson* is inapposite here. In that case, the Nebraska Supreme Court reversed the trial court's entry of summary judgment because, as the court put it, "there exist[ed] genuine issues of material fact as to whether [the defendants] *substantially* invaded or interfered with the [plaintiffs'] use and enjoyment of their property so as to constitute an actionable private nuisance." *Id.* at 133 (emphasis added). *Johnson* thus did not involve a preliminary-injunction motion, which means that the Nebraska Supreme Court was never faced with the only question that's relevant here—whether the movant has "clearly established" *irreparable* harm. The Plaintiffs thus take *Johnson*'s use of the word "substantial" out of context and appear to have confused the element of "substantial" likelihood of success on the merits with the test for irreparable harm.[4] Of course, these two elements address different problems and ask distinct questions. Whereas the former tests whether the Plaintiffs are likely to prevail on their claim—and, thus, under *Johnson*, whether the Defendants "substantially" interfered with the Plaintiffs' right to use and enjoy their property—the latter asks whether the Plaintiffs will suffer an un-compensable injury if an injunction is not immediately issued. *Johnson*, then, does not support the Plaintiffs' view that the R&R contains some dispositive contradiction.

In sum, the Plaintiffs' lack of evidentiary support likewise undermines their claim of irreparable harm.[5]

---

[4] Indeed, in their Renewed Motion, the Plaintiffs cite *Johnson* throughout their likelihood-of-success discussion—and never in their argument on irreparable harm. *See* Renewed Motion at 8–10.

[5] Because the Plaintiffs have failed to establish irreparable harm, the Court need not address the three remaining elements of a preliminary injunction. *See City of Jacksonville*, 896 F.2d at 1285

\*\*\*

Having carefully reviewed the record, the Court hereby

**ORDERS AND ADJUDGES** that Magistrate Judge Brannon's R&R [ECF No. 105] is **ADOPTED IN FULL**. The Plaintiffs' Motion for Preliminary Injunction [ECF No. 57] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 22nd day of September 2020.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

---

("We need not address each element because we conclude that no showing of irreparable injury was made.").